THE OMAHA NATIONAL BANK, A NATIONAL BANKING
ASSOCIATION, APPELLEE, V. CONTINENTAL WESTERN
CORPORATION, A CORPORATION, ET AL., APPELLEES,
IMPLEADED WITH DAVE BENNETT, INC., A CORPORATION,
GUNDERSON'S INC., A CORPORATION, BANK OF MILLARD,
A CORPORATION, AND M & S GRADING, INC.,
A CORPORATION, APPELLANTS.

278 N. W. 2d 339

Filed May 1, 1979.  No. 42150.

Robert T. Cannella of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellant Gunderson's.

James E. Lang of Marer, Venteicher, Strasheim, Seidler, Laughlin & Murray, P.C., for appellant M & S Grading.

Kennedy, Holland, DeLacy & Svoboda, for appellant Dave Bennett.

James C. Cripe of Kelly, Cripe & Wellman, for appellees Automation and Alfab.

Heard before KRIVOSHA, C. J., CLINTON, and HASTINGS, JJ., and STUART, District Judge, and KUNS, Retired District Judge.

KUNS, Retired District Judge.

This is an action for the foreclosure of a real estate mortgage brought by The Omaha National Bank, the plaintiff, against Continental Western Corporation and others, including junior lienors, defendants.

The District Court for Sarpy County, Nebraska, entered a decree of foreclosure, adjudicating various amounts due from the Continental Western Corporation and the extent and priority of liens for such amounts. On appeal by Dave Bennett, Inc., and M & S Grading, Inc., from the portion of such decree disallowing mechanic's liens claimed by each of said parties separately, this court affirmed the decree as to Dave Bennett, Inc., and reversed as to M & S Grading, Inc., establishing its mechanic's lien as to lots 1 to 402, Coronado subdivision, Sarpy County, Nebraska, for the amount claimed by it. See Omaha Nat. Bank v. Continental Western Corp., 202 Neb. 238, 274 N. W. 2d 867. None of the remaining parties appealed from the decree. During the pendency of such appeal, the security was sold at foreclosure sale and the same was duly confirmed by the District Court. Thereafter, applications for the distribution of the surplus were made by several junior lien holders. The order for distribution granted the applications of Alfab, Inc., and Automation, Inc., the appellees. This appeal, from the order of distribution of the surplus, is by Gunderson's, Inc., M & S Grading, Inc., Bank of Millard, and Dave Bennett, Inc., appellants, who assign error. We sustain the assignments of error and reverse and remand the cause with instructions.

It is not necessary to summarize either the evi-

dence or the portion of the record as to those matters which preceded the entry of the decree of foreclosure. That decree, as corrected in accordance with the previous opinion of this court, is res judicata as to all parties.

On September 9, 1977, the trial court found the amount due each creditor of the defendant, Continental Western Corporation, fixed the priority thereof, and ordered the foreclosure. The real estate, which was the security for the first lien of The Omaha National Bank, consisted of two noncontiguous tracts designated as the Antilles and Coronado properties. In paragraph 18 of the decree, the trial court found priorities generally as follows: Tract A, "The Coronado Property," containing lots 1 to 402, inclusive, and lots "A," "B," and "C," in Coronado subdivision in Sarpy County, Nebraska, all subject to first lien in favor of The Omaha National Bank, except lots 396 to 399, inclusive, and part of lot "C" in the southwest quarter of Section 28, Township 14 North, Range 11 East of the 6th P.M., Sarpy County, Nebraska, and eight different parcels thereof subject to junior liens as stated by the court; Tract B, "The Antilles Property," described by metes and bounds, all subject to first lien in favor of The Omaha National Bank, and two parcels thereof subject to junior liens as stated by the court. Lots 396 to 399, inclusive, of the Coronado property were not subject to lien of The Omaha National Bank, but to a first lien held by the First National Bank and two junior liens; the portion of lot "C" in the southwest quarter of Section 28, Township 14 North, Range 11 East of the 6th P.M., Sarpy County, Nebraska, was not subject to the lien of The Omaha National Bank, but to a first lien held by Gunderson's, Inc., and three subordinate liens. In paragraph 19 of the decree, the court directed that upon foreclosure sale, all of the real estate should first be offered for sale by parcels in the following order: (1) All of the

Antilles property; (2) lots 396 to 399, inclusive, of the Coronado property; (3) the part of lot "C" in the southwest quarter of Section 28, Township 14 North, Range 11 East of the 6th P.M., Sarpy County, Nebraska; and (4) lots 1 to 395, inclusive, lots 400 to 402, inclusive, and lots "A," "B," and "C," except that parcel in (3). Offering the property as an entirety was authorized but the bids for the entirety were not sufficient and the bids for the parcels were finally accepted. Lienors were authorized to bid separate portions of their secured debts upon different parcels. In paragraph 20, the court directed that the proceeds of the sale be applied to the payment of costs and the satisfaction in whole or in part of the first liens; that the surplus, if any, should remain in the hands of the clerk for disbursement pursuant to the further order of the court; and that such surplus should be subject to the lien of the junior lien holders in the same order in which they bound the real estate, to be distributed by the court according to their respective equities and priorities.

Next appears this proviso: "[P]rovided, however, such surplus sale proceeds shall first be divided between 'The Antilles Property' and 'The Coronado Property' in the same proportion as such separate tracts contributed to the creation of such surplus funds, such proportion to be the same proportion as the respective aggregate highest bids for each such tract bore to one another when the real estate was offered for sale by parcels as above provided whether such bids were finally accepted or not, and after such division, the liens of the junior lienholders on each such tract shall attach to the portion of the surplus sale proceeds so attributed thereto and their respective rights in such portions of the surplus funds shall thereafter be separately determined as above stated." The return of the sheriff to the order of sale showed that the parcels were sold as follows: (1) The Antilles property to

S.W.N., Inc., for $100,000; (2) lots 396 to 399, inclusive, in Coronado property to the First National Bank, Council Bluffs, for $71,000; (3) part of lot "C" of Coronado property, in the southwest quarter of Section 28, Township 14 North, Range 11 East of the 6th P.M., Sarpy County, Nebraska, to Gunderson's, Inc., for $15,000; and (4) lots 1 to 395, inclusive, lots 400 to 402, inclusive, and lots "A," "B," and "C," except that parcel in (3) to The Omaha National Bank for $385,423.27.

By an addendum the sheriff reported the unsuccessful offer of the entirety and also that The Omaha National Bank had bid the sum of $75,000 for the parcel referred to in (1), but said bid was not accepted. The trial court confirmed the sale and directed the making of deeds to the high bidders. Upon the payment of bids and the application of lien payments, this left a surplus of $25,000 to be applied to the payment of costs and the balance for distribution among the lien holders junior to The Omaha National Bank. The appellees contended that the bid of S.W.N. for the parcel referred to in (1) produced the entire surplus and that it should be apportioned between them in proportion to their lien interests in the Antilles property. Appellants contended that the amount of the surplus should be divided into two parts between the Antilles and Coronado properties according to the proviso quoted above and that such parts should then be apportioned among junior lien holders. The trial court upheld the contention of the appellees and ordered distribution accordingly.

The proceeds of the sale of the parcels referred to in (2) and (3), not subject to the lien of The Omaha National Bank, are not material to nor involved in this appeal.

It is first necessary to consider whether paragraph 20 of the decree of foreclosure is binding upon the court and the parties and whether it requires a proportionate division of surplus proceeds between the

Antilles and Coronado properties. The trial court did have jurisdiction and the power to order the disposition of the proceeds of the sale. 59 C. J. S., Mortgages, §§ 689 and 692, pp. 1251 and 1257. The parties, by their failure to appeal the provisions for the disposition of proceeds, have become bound by the terms of said decree. The parties to this appeal concede this point by arguing only the meaning of paragraph 20. The merits of paragraph 20 are not presented by this appeal and we do not hold that surplus proceeds should be subject to a preliminary division as here provided, if such issue were presented in this appeal.

In the more usual and frequent cases where marshaling of assets is ordered, the primary lienor has security, a part of which is subject to a second lien. Equity will then, if requested by the subordinate lienor, require the prior lienor to satisfy his claim so far as possible by resort to the part of his security not subject to the subordinate lien. The equities are determined at the time when marshaling is sought; a first lienor who has previously released a part of his security does not lose any of his priority over the subordinate. First State Bank v. Niklasson, 116 Neb. 713, 218 N. W. 744.

When the first lienor forecloses a lien upon one or more tracts which have been encumbered to several junior lienors in several separate parcels, the primary lien should be enforced against the entire security so that each junior lienor will bear the burden of the first lien in proportion to the value of the parcel upon which he has a claim; any surplus arising after the satisfaction of the first lien should then be apportioned among the junior lien holders according to the respective values of their security. Bryson v. Newtown Real Estate & Development Corporation, 153 Conn. 267, 216 A. 2d 176; Vandever Invest. Co., Inc. v. H. E. Leonhardt Lbr. Co., 503 P. 2d 185 (Okla.); Annotation, 76 A.L.R. 3d 326. When, how-

ever, several junior lienors have taken security upon the same tract, their relative priority will depend upon the time when their liens attached.

An examination of paragraph 20 shows that the court was making a move toward apportionment by providing that any surplus should be divided between the Antilles property and the Coronado property in proportion to the amounts realized from each. This provision was clear and definite. It was not provided that there should be a comparison of the amounts bid upon each tract by unsuccessful bidders. It is very possible that bidders might vary their bids between tracts for tactical reasons to promote their own interests, even though acting in good faith. In this case, the trial court found that the high bid on each tract represented the fair value thereof, and that a resale would not produce a greater amount. There is no such finding as to the bid of The Omaha National Bank upon the Antilles property. There would be a different situation if, during the course of the proceedings leading to the entry of the decree, the amount of the debt and lien had been divided between the two properties and each was ordered sold for the satisfaction of the separate lien against it. It would have been simple to determine separate surpluses. The Omaha National Bank, however, would have surely appealed from such a restriction upon the operation of its lien.

The trial court failed to apply the clear provisions of paragraph 20 and to allocate the amount of the surplus between the Antilles and Coronado properties in proportion to the amount for which each was sold. The order of distribution is reversed and the cause is remanded with the following instructions: (1) The trial court will allocate the amount of the surplus remaining after the discharge of the first lien of The Omaha National Bank and the payment of costs, excluding the costs of this appeal, 79.4 percent to the Coronado property and 20.6 percent to

the Antilles property; (2) the court will then determine a proportion of each separate parcel within Coronado by area or value to the entire tract and follow the same process to parcels within Antilles; and (3) the allocated part of the surplus as to each tract separately will then be ordered paid to junior lienors according to such proportions and in the order of their priority in time as to the parcel in which they have an interest.

REVERSED AND REMANDED WITH INSTRUCTIONS.